UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DAVID J. OUDSEMA,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 1:11-cv-1264

Honorable Joseph G. Scoville

**OPINION**

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income benefits (SSI). Plaintiff filed his applications for benefits on October 20, 2008, alleging an October 9, 2006 onset of disability (A.R. 128-35). He later amended his claims to allege a June 7, 2007 onset of disability.[1] (A.R. 160). His claims for DIB and SSI benefits were denied on initial review. (A.R. 70-77). On January 14, 2011, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 23-65). On February 14, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 8-17). On October 5, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, November 2008 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 10). Plaintiff argues the Commissioner's decision should be overturned on the following ground: "[T]he Commissioner erred as a matter of law in [his] application of 20 CFR § 404.1513 and 20 CFR 404.1527(d), as to the opinion and medical records of the medical provider, William Ulrich, PA-C." (Statement of Issue, Plf. Brief at 1, docket # 11). Upon review, the Commissioner's decision will be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from June 7, 2007, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after June 7, 2007. (A.R. 10). The ALJ found that plaintiff had the following severe impairments: "chronic obstructive pulmonary disease (COPD) and emphysema (status-post lung surgery) and status-post procedure to correct atrial fibrillation (i.e. Cox-Maze heart

surgery." (A.R. 10). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 12). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours and sit six hours in an eight-hour workday; and work where he avoids concentrated exposure to extreme cold and fumes, odors, gases, and poor ventilation.

(A.R. 13). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (A.R. 13-15). The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because he was capable of performing his past relevant work as a machine operator.[2] (A.R. 15).

**1.**

Plaintiff argues that the ALJ did not give proper weight to the opinion of Physician's Assistant Ulrich:

---

[2] "Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009). The ALJ made an alternative finding that plaintiff was not disabled at step 5 of the sequential analysis. (A.R. 15-16).

> [A] physician's assistant is clearly listed as an "other source" under § 404.1513. In this case it is argued that the ALJ erred in failing to classify Mr. Ulrich as an "other source" and in [not] giving said source's opinion significant weight.
>
> It is also argued that the Commissioner failed to comply with 20 CFR § 1527. An ALJ must give the medical opinion of a treating source controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. Wilson v. Commissioner of Social Security 378 F3d 541 (2004).

(Plf. Brief at 5).

A physician's assistant is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). There is no "treating physician's assistant rule," and the opinion of a physician's assistant is not entitled to any particular weight. *See Geiner v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)). The opinions of a physician's assistant fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, 416.912). This is not a demanding standard. It was easily met here.

Most of the records that plaintiff submitted in support of his claims for DIB and SSI benefits predate his alleged onset of disability of June 7, 2007. (A.R. 225-335). Plaintiff's treating

physicians noted his history of "heavy alcohol use," binge drinking, tobacco abuse, and history of intermittent marijuana use. (A.R. 231, 243). On October 30, 2006, plaintiff's treating surgeon, Eric M. Hoenicke, M.D., performed a bilateral lung volume reduction surgery and a full Cox-Maze procedure to address plaintiff's problems with chronic atrial fibrillation. (A.R. 299-300, 311-12). In January 2007, Thomas Hill, M.D., another treating surgeon, performed a cardioversion procedure. (A.R. 319-23). On February 2, 2007, plaintiff returned to work and he continued to work until he was laid off in June 2007. (A.R. 52). On February 20, 2007, Dr. Hoenicke noted that plaintiff was attending cardiac rehabilitation and had not experienced atrial fibrillation. Dr. Hoenicke stated: "Mr. Oudsema is doing very well. His PFTs show no deterioration of lung function after his recent lung surgery. He is in normal sinus rhythm." (A.R. 319).

On May 1, 2008, plaintiff appeared at Muskegon Family Care for an unscheduled checkup. He was seen by Physician's Assistant Benjamin Dorotinsky. Mr. Dorotinsky noted as follows: "Patient has not been compliant with medications (patient ran out 4 months ago and never refilled or came back in). There have been no medication side effects. The patient is not checking blood pressures at home. Patient not following recommended restrictions to diet. Patient denies formal recommended exercise program." (A.R. 336). Plaintiff appeared well and cooperative. He was not anxious or in acute distress. (A.R. 337). Plaintiff's blood pressure was 180/104. His lungs displayed no adventitious sounds with good air movement bilaterally. (A.R. 336-37).

On March 31, 2009, plaintiff reported to Donald Sheill, M.D., that he quit smoking in 2001. He stated that he "essentially quit alcohol after losing his driver's license in November 2008 due to drinking." (A.R. 340-41).

On August 9, 2010, Mr. Ulrich completed a "Pulmonary Residual Functional Capacity Questionnaire." (A.R. 392-94). Ulrich stated that he saw plaintiff on an occasional basis, 1-to-3 times per year since 2005. He offered his opinion that during a typical workday, plaintiff would "constantly" be distracted by shortness of breath and back pain. Mr. Ulrich stated that plaintiff was incapable of performing even low stress jobs. He stated that plaintiff could sit, stand, and walk less than two hours in an eight-hour workday. He could occasionally lift 10 pounds. Mr. Ulrich suggested that plaintiff should avoid all exposure to extreme cold, heat, humidity, cigarette smoke, soldering fumes, solvents and cleaners, chemicals, fumes, odors and gasses. He stated that plaintiff would miss more than four days of work per month and would not be able to perform a job for even one eight-hour shift. The questionnaire concluded with Ulrich's statement that plaintiff was: "Very frustrated, anxious & depressed over chronic condition that has not improved in past 4 years. Limited ability to perform self care activities in his home. Long term unemployment & extremely limited income." (A.R. 394).

The ALJ found that Mr. Ulrich's opinions were entitled to "slight weight" because they were not supported by objective evidence and were inconsistent with other record evidence:

> William Ulrich, a physician's assistant with Muskegon Family Care, has concluded that the claimant has a limited ability to perform self-care activities at home and that he is expected to have long-term unemployment and limited income (Exhibit 13F)[A.R. 392-94]. While the undersigned has considered Mr. Ulrich's observations, his opinion is not controlling inasmuch as he is not an acceptable medical source for Social Security purposes. While Mr. Ulrich's opinion is not one from an acceptable medical source, the undersigned has considered his observations. As recently as October 6, 2010, Mr. Ulrich has reported that the claimant is not compliant with his prescribed medication usage. On examination, Mr. Ulrich has noted that while the claimant has decreased breath sounds in both lung fields, no adventitious sounds have been appreciated. Cardiovascular inspection shows that the claimant has no heart murmurs. The physician's assistant has related that since the cardioversion procedure in January 2007, the claimant has remained in sinus rhythm since then (Exhibit 14F/10)[A.R. 404]. Mr. Ulrich has asserted that "anxiety" is a disabling factor

but the medical reports (including Mr. Ulrich's own observations in Exhibits 12F and 14F)[A.R. 378-91, 395-404] do not support this disabling conclusion. The undersigned, accordingly, does not give significant weight to Mr. Ulrich's opinion.

(A.R. 14-15).

The ALJ's findings are supported by more than substantial evidence. Mr. Ulrich's opinions are not well supported by objective evidence. His progress notes do not support the extreme restrictions he suggested in his questionnaire responses. For example, on February 2, 2007, Mr. Ulrich made the following notation: "Doing well now, NO chest pain or SOB, and no sudden dizzy spell." (A.R. 329). Plaintiff was well groomed and in no apparent distress. His heart had no murmurs and his lungs displayed no adventitious sounds. (A.R. 330). On May 7, 2007, Ulrich noted that plaintiff felt well, "with minor complaints." (A.R. 332). A year later, Ulrich noted that plaintiff was not following recommended dietary restrictions and was not compliant in taking his medications. (A.R. 336). On May 14, 2009, Mr. Ulrich noted that he had not seen plaintiff for a year. Plaintiff stated that he had not taken his medications "for about 10 days." (A.R. 372). Physician's Assistant Ulrich restarted plaintiff on his blood pressure medications. (A.R. 373). On August 28, 2009, Ulrich noted that plaintiff was taking his medications and suffered no side effects. Plaintiff was following a low sodium diet and trying to ride his bike "as much as possible." (A.R. 360). Mr. Ulrich noted that plaintiff's persistent atrial fibrillation had "resolved" after the January 2007 cardioversion procedure. (A.R. 358). I find no error. The ALJ is responsible for weighing medical opinions, not the court. *See Buxton*, 246 F.3d at 772-75; *see also White v. Commissioner*, 572 F.3d at 284; *Price v. Commissioner*, 342 F. App'x 172, 177-78 (6th Cir. 2009).

**2.**

Plaintiff brief concludes as follows:

> The ALJ based his findings of Mr. Oudesma's residual functional capacity based on testimony given by Mr. Oudesma of his daily activities. It should be noted that the ALJ's summary of his daily activities is not accurate with that of the testimony given at the hearing in that Mr. Oudsema confirmed that his sister helped him with his ADL's. The ALJ's determination of Mr. Oudsema's RFC is contrary to the regulations and court rulings of Johnson v. Commissioner of Social Security 652 F3d 646 ([6th Cir.] 2011) and Cole [v. Astrue, 661 F.3d 931 (6th Cir. 2011)].[3]
>
> Mr. Oudsema's serious ongoing pulmonary impairments along with the objective medical evidence supports the adoption of Mr. Ulrich's RFC as opposed to the ALJ's which is inconsistent with the record as a whole.

(Plf. Brief at 5). The above-quoted argument is deemed waived. It was not presented in plaintiff's statement of issues, and more significantly, it is not supported by any developed argument. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

Even assuming that plaintiff did not waive the issue, it is meritless. The issue of RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). Thus, even if Mr. Ulrich had been a treating physician rather than a physician's assistant, his opinion as to plaintiff's RFC would have been entitled to no weight.

---

[3]Citations to the *Cole v. Astrue* and *Johnson v. Commissioner* decisions do nothing to advance plaintiff's challenge to the ALJ's factual finding regarding his RFC. *Cole* stands for the unremarkable proposition that opinions from "other sources" are "considered." *See Cole v. Astrue*, 661 F.3d at 939. The "sole issue" on appeal in *Johnson v. Commissioner* was whether the ALJ committed error when he failed to give controlling weight to the opinion of a "treating physician." 652 F.3d at 647. Mr. Ulrich was not a treating physician.

Further, plaintiff's burden on appeal is not met merely by citing evidence on which the ALJ could have based a decision in his favor. *Jones v. Commissioner*, 336 F.3d at 477. The standard of review is whether the ALJ's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual findings regarding plaintiff's RFC and credibility easily pass scrutiny under this highly deferential standard of review. *See Ulman v. Commissioner*, 693 F.3d at 713. RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ's finding that plaintiff retained the RFC for a limited range of light work is supported by more than substantial evidence.

Plaintiff argues that the ALJ's summary of his daily activities "is not accurate with that of the testimony given at the hearing in that Mr. Oudsema confirmed that his sister helped him with his ADL's." (Plf. Brief at 5). Plaintiff's characterization of his testimony is inaccurate. In response to a question from his attorney regarding dust sensitivity, plaintiff testified: "Yeah, I don't even dust my home. I live in a little house in the alley and it is all gravel and dirt and my house gets dusty pretty easy. I have my sister, she comes over and does [it] for me, and I go outside while she does it." (A.R. 48). Plaintiff made no other reference to his sister or her purported assistance with his activities of daily living. Plaintiff's statements to the Social Security Administration emphasized that he did his own yard work and cleaning. (A.R. 184, 186, 215-17). It was this evidence that the ALJ noted in his opinion:

> The claimant's daily activities, moreover, reflect an ability to do work activities, including those at the light exertional level, on a sustained basis. He testified that he is able to wash dishes, care for his dog and watch movies. He has also reported that he lives alone in a house

and although he becomes short of breath, prepares his own meals, does all the household cleaning, does the laundry, takes walks and gets the mail, goes shopping, plays pool when he gets a chance, visits with family members once or twice a week, and handles financial matters (Exhibits 4E, 11E)[A.R. 184-91, 215-222].

(A.R. 14). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ found that plaintiff's failure to comply with prescribed treatment further undercut the credibility of his testimony. (A.R. 14). The social security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for his failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 479-80 (6th Cir. 1988). The court finds that the ALJ's factual findings regarding plaintiff's RFC and credibility are supported by more than substantial evidence.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.

Dated: February 13, 2013   /s/ Joseph G. Scoville
United States Magistrate Judge